IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 05-cv-00833-RPM-MJW

VINCENT CROWE and
LARRY FORD, II,

      Plaintiffs,

v.

SOUTH ADAMS COUNTY WATER AND SANITATION DISTRICT, a body corporate
and politic, and
GREG FABISIAK, in his individual capacity,

      Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

      The plaintiffs, Vincent Crowe and Larry Ford II, allege that they were terminated

and demoted, respectively, by the General Manager, defendant Greg Fabisiak

("Fabisiak"), because they supported a co-worker's (Terri Golden) complaints of sexual

harassment by her immediate manager, Jon Benallo ("Benallo"), at the South Adams

County Water and Sanitation District ("District").  The plaintiffs assert claims for

violation of their First Amendment right to freedom of speech and association (First

Claim against the District and Fabisiak), retaliation in violation of Title VII (Second

Claim against the District), and intentional interference with contract (Third Claim

against Fabisiak).

      The defendants assert that the plaintiffs, along with two other employees, were

disciplined because Crowe impersonated Fabisiak (in front of Larry Ford II and two

other employees) when he called the District's uniform supplier and ordered uniform

pants for Larry Ford II ("Larry Ford") to replace a pair that had been misordered intentionally as a prank by Benallo and Michael Thompson, a supervisor.  All were employees in the District's Development Department.

The defendants moved for summary judgment of dismissal of the plaintiffs' claims on the basis that: 1) the plaintiffs cannot provide evidence of any custom, policy or practice to support the First Amendment claim; 2) Fabisiak is entitled to qualified immunity as to the First Amendment claim; 3) the First Amendment claim fails because the alleged speech does not relate to a matter of public concern; 4) the plaintiffs were disciplined because of the impersonation incident and not their "cooperation" with Golden's complaints, which was a legitimate exercise of managerial discretion by Fabisiak as the District's General Manager; and 5) there is no evidence that Fabisiak intentionally and improperly induced the District to breach any alleged "at-will" employment contract between the plaintiffs and the District.

The District has a "Development Department" which handles matters relating to new developments.  The Development Department was located in a trailer a "few miles" away from the District's main offices.  Development Department employees are subject to "South Adams County Water and Sanitation District Employee Rules, Regulations and Benefits, Effective November 8, 2000."   This manual contains, among other things, the District's disciplinary rules.  On the front of the manual, it states "THIS MANUAL IS NOT A CONTRACT" and that "EACH EMPLOYEE OF THE DISTRICT IS AN "AT-WILL" EMPLOYEE."

Sometime around August 2003, Golden was hired as the Development

2

Department's secretary/receptionist by Larry Ford, Sr., then the District's General Manager and the father of plaintiff Larry Ford.  Golden had been working in another District position.  Benallo, the Development Department's manager, was Golden's supervisor.  Benallo also supervised Thompson, the Development Department supervisor, who, in turn supervised field inspector Larry Ford, Richard Ford (no relation to Larry Ford), and Crowe.  During all relevant times, Benallo, Golden, Thompson, Larry Ford, Richard Ford, and Crowe were the only District employees working at the Development Department trailer.

Benallo reported to Fabisiak after he replaced Larry Ford, Sr. who retired in January 2004.  As the General Manager, Fabisiak had the final decision-making authority regarding discipline and termination of District employees, pursuant to District Policy and Procedures.

Golden contends that in August, 2003, Benallo began subjecting her to remarks which she interpreted as sexual such as "If I had had my choice, I'd have hired a hottie out of college that I could have had an affair with."  Golden also contends that Benallo constantly criticized her job performance and threatened her with termination.

The plaintiffs have made a showing that on February 25, 2004, when Benallo discovered a fax Golden left on his chair, he yelled at Golden and threatened to punch her in the face if she put another underground utilities locate on his desk again.  This was witnessed by the other Development Department employees.

On February 26, 2004, Golden reported this incident to Fabisiak, complaining that Benallo's threat of violence, inappropriate comments, acts of harassment, and

3

increasing of her workload without providing training, were designed to set her up for termination. Fabisiak kept contemporaneous notes of his actions with respect to Golden's complaints. According to those notes, he met with Benallo that day (February 26) to discuss Golden's complaints.

On the next day, February 27, 2004, Golden went to see Fabisiak again and Benallo approached her while she was waiting for Fabisiak. Benallo's actions here are disputed. Golden stated that he begged her to drop her complaint. Golden complained to Fabisiak that Benallo confronted her. According to Fabisiak's notes, he met with Golden and Benallo that day about Golden's complaints.

Golden was given the option to take a paid leave and work from home while Fabisiak was investigating the matter or go back and work in the trailer. Fabisiak gave Golden his pager number and told her to page him at any time if she was concerned. Golden said she should not be the one to move if Benallo was the one threatening her. Golden went back to work and made arrangements so an inspector would be at the trailer so Golden would not be there alone.

Golden discussed her complaint with other Development Department employees, and Crowe, Larry Ford, Thompson and Richard Ford agreed to "come forward" to support Golden's complaints. Thompson called Fabisiak and said he and the other inspectors were "ready and willing" to come forward as witnesses to Benallo's "nose-punching" remark to Golden.

On March 1, when Fabisiak asked Golden to provide him with a written statement, she asked why he had not interviewed the witnesses yet.

4

On March 2, Fabisiak interviewed the plaintiffs, Thompson, and Richard Ford. For the purposes of the motion, the defendants have agreed that Fabisiak considered Golden's complaint to include possible sex discrimination and harassment and he investigated whether Benallo's alleged conduct was gender related.  The defendants also agreed that each employee confirmed that Benallo cursed at Golden and threatened to punch her in the nose, often made disparaging and inappropriate comments regarding her, singled her out for hostile treatment, overwhelmed her with work without proper training, and discussed his intention to terminate her employment.

On March 5, Fabisiak interviewed Benallo and Fabisiak's notes reflected that Benallo stated that he jokingly said he would "bop" Golden on the nose.

On March 8, Golden complained to Fabisiak about the pace of his investigation.

By memo dated March 10 to Golden, Fabisiak confirmed her complaint about Benallo's "threatening and intimidating conduct" and his failure to provide her with appropriate training and guidance and setting her up for failure.

On March 13, Golden submitted a written statement to Fabisiak about her complaint, which included, among other things, the following: 1) Benallo gave her more responsibilities without providing her the help she needed; 2) "for months" Benallo made inappropriate and threatening comments to her, such as he "would have hired a sexy, young girl right out of college to be my secretary so I could have an affaire with her"; 3) at the beginning of the year, Benallo's comments became harsh, hateful and inexcusable, telling her such things as "update your resume"; 4) on February 6, Benallo told Larry Ford, in front of three male employees, among other things, that "Tell your

5

dad [Larry Ford, Sr.] thanks for hiring her!  "She is worthless!"; 5) on February 23,

Benallo got upset at her about how "old" the coffee in the pot was; 6) on February 25,

Benallo yelled at her for putting a "locate" on his desk, saying "You put another

[underground utilities] locate [request] on my desk and I will punch you in the face"; and

7) she felt threatened and intimidated by Benallo, and her and the entire Department's

job performance have suffered.

Based on his investigation, Fabisiak determined that the remarks Golden

attributed to Benallo were not motivated by gender discrimination.

On March 23, Fabisiak met with and issued a Notice of Proposed Disciplinary

Action to Benallo, outlining what he found and concluded.  Benallo had no prior

documented problems.

On March 24, Fabisiak gave Golden a memo dated March 23, advising her of

the results of his investigation and the disciplinary actions he intended to impose on

Benallo.  The discipline consisted of one week suspension without pay, required

attendance at a management sensitivity training course, and six months' probation.

Golden said she was not satisfied because she felt her safety and the safety of others

were at risk because of Benallo's temper and that Benallo had acted "strangely" since

she complained about him.  Golden believed that Fabisiak was annoyed with her

complaints.

The plaintiffs contend that after imposing disciplinary action on Benallo, Fabisiak

began treating the employees who supported Golden in a less friendly manner,

occasionally with hostility.  The plaintiffs contend that Benallo also began treating his

6

subordinates differently, occasionally with hostility.  For example, Thompson testified that Benallo said that if he - Benallo - was going down, all of the Department employees were going down.  These contentions are disputed.

There is a genuine dispute as to the facts giving rise to the disciplining of the plaintiffs by Fabisiak.  Thompson was responsible for submitting orders for uniforms to Fabisiak for approval.  Construing the facts in the light most favorable to the plaintiffs, in late April or early May, 2004, Department employees filled out their annual "Uniform Order Form."  As a practical joke, Thompson and Benallo caused Larry Ford's uniform clothing to be ordered in the wrong sizes.

When Benallo gave Larry Ford's oversize pants to him and he tried them on, Benallo and Thompson laughed at him.  Benallo and Thompson would not order new pants for Larry Ford.  Crowe said to Benallo and Thompson that Larry Ford's pants were "ridiculous" and their treatment of Larry Ford was "harassment."

After Benallo left for the day, Crowe, in the presence of Larry Ford, Thompson, and Richard Ford, called the District's uniform supplier and successfully ordered new pants for Larry Ford by impersonating Fabisiak.

The defendants agreed for the purposes of their motion that Larry Ford and Crowe did not approach Fabisiak about Benallo's "harassment" of Larry Ford regarding the pants because they feared retaliation.

Larry Ford personally went to the uniform supplier's office to return his old pants and asked the supplier to call him when his new pants arrived.  He received five pairs of new pants but the District was not charged.

7

In late May, Fabisiak learned of the ordering of new pants for Larry Ford from Ron Lay (another employee), called the supplier, and then spoke with Lay and Benallo. Benallo investigated the matter for Fabisiak and Crowe admitted the impersonation. On June 3, Fabisiak interviewed the employees who essentially admitted their roles in the impersonation incident.

Following his investigation, Fabisiak proposed the following discipline: 1) Richard Ford would be suspended for one day without pay and placed on probation for one year for failing to report Crowe's impersonation of Fabisiak in ordering the new pants; 2) Thompson would be suspended for one week without pay, placed on probation for one year, and required to obtain supervisor training for failing to report Crowe's impersonation of Fabisiak in ordering the new pants; 3) Crowe's employment would be terminated; and 4) Larry Ford would be demoted one grade, from Inspector II (Grade 8) to Inspector (Grade 7), suspended one week without pay, and placed on probation for one year, for his role in obtaining the pants directly from the supplier and in failing to report Crowe's impersonation of Fabisiak in ordering the new pants.

On June 9, Fabisiak issued notices of intent to impose the respective disciplinary actions, outlining the results of his investigation.  Between June 9 and 18, the plaintiffs, Thompson, and Richard Ford submitted individual written rebuttals to the notices.

The plaintiffs dispute the severity of the discipline, especially in comparison to the discipline of Benallo for his conduct involving Golden.

On August 25, Golden submitted a second written internal complaint about

8

Benallo.  Fabisiak testified that he told Benallo about Golden's concerns and then he

met with Benallo and Golden together about the matter.  He confirmed that if Benallo

retaliated against Golden it would be a violation of his probation and it was possible

that he would be terminated.

On September 2, Benallo submitted a formal complaint to Fabisiak that the

Department employees fabricated statements about his treatment of Golden, accusing

his staff of "collusion" and "harassment."  Fabisiak testified that he did not consider the

complaint to be retaliatory but an example of some of the problems that were going on

and how that department was being run, and that maybe the trailer needed to be

moved back to a more central location.  The plaintiffs argued Benallo's action was

retaliatory, which the defendants agreed for the purposes of the motion.

On September 2, Larry Ford and Thompson filed separate EEOC complaints

alleging retaliation for complaining of discrimination against Golden and supporting her

complaint.  Richard Ford filed his EEOC complaint on September 3.  Golden also filed

an EEOC complaint on September 3, alleging hostile work environment and retaliation.

On October 3, Crowe filed his EEOC complaint.

After the EEOC complaints were filed, Fabisiak moved Benallo from the trailer to

the main office.

The plaintiffs have made a sufficient showing of support for their claims of

adverse employment actions motivated by retaliation against them for supporting

Golden's claim of gender discrimination and harassment in violation of Title VII.  A jury

may reasonably infer that Fabisiak's reasons for the discipline imposed were

pretextual, masking a retaliatory motive.

The plaintiffs' claims under 42 U.S.C. § 1983 for First Amendment violations are not supported by sufficient evidence.  The speech involved was an internal personnel dispute which is not protected speech.  There is no basis for finding a violation of the freedom of association or assembly beyond the statutory protection of Title VII.

The plaintiffs were at will employees and there is insufficient evidence to support their claim of tortious interference with contract.  Moreover, there is immunity from this tort claim under the Colorado Governmental Immunity Act.

Upon the foregoing, it is

ORDERED, that the defendants' motion for summary judgment is granted as to the First and Third Claims for Relief and denied as to the Second Claim for Relief against the District under Title VII.

Judgment will enter dismissing defendant Greg Fabisiak who shall be awarded his costs.

Dated: March 30th , 2007

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge